STEPHEN M. HAYES (SBN 83583)
RYAN Z. KELLER (SBN 249193)
CHARLES E. TILLAGE (SBN 177983)
HAYES SCOTT BONINO ELLINGSON
GUSLANI SIMONSON & CLAUSE LLP
999 Skyway Road, Suite 310
San Carlos, California 94070
Telephone: 650.637.9100
Facsimile: 650.637.8071

Attorneys for Plaintiff
MASSACHUSETTS BAY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MASSACHUSETTS BAY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NEUROPATHY SOLUTIONS, INC. dba SUPERIOR HEALTH CENTERS,<br><br>Defendant. | CASE NO.: 8:21-cv-00607-DOC-JDE<br><br>**PLAINTIFF'S NOTICE OF APPEAL** |

Notice is hereby given that Plaintiff Massachusetts Bay Insurance Company appeals to the United States Court of Appeals for the Ninth Circuit from the Order and resulting Judgment Granting Defendant's Motion for Judgment on the Pleadings, entered in this action on February 9, 2022 (ECF No. 82) and attached hereto as Exhibit A. The Order and Judgment resulted in a dismissal with prejudiced, which terminated the action.

Plaintiff's Representation Statement is attached to this Notice of Appeal as

1 | Exhibit B, pursuant to Rule 12(b) of the Federal Rules of Appellate Procedure and
2 | Ninth Circuit Rule 3-2.

3 | Dated: March 9, 2022          HAYES SCOTT BONINO ELLINGSON
                                   GUSLANI SIMONSON & CLAUSE, LLP

                                   By: */s/ Ryan Z. Keller*
                                     STEPHEN M. HAYES
                                     RYAN Z. KELLER
                                     CHARLES E. TILLAGE
                                     Attorneys for Plaintiff
                                     MASSACHUSETTS BAY INSURANCE
                                     COMPANY

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:21-cv-00607-DOC-JDE                              Date: February 9, 2022

Title: MASSACHUSETTS BAY INSURANCE COMPANY v. NEUROPATHY SOLUTIONS, INC., ET AL.

PRESENT:   THE HONORABLE DAVID O. CARTER, U.S. DISTRICT JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**   **ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS [64] AND GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [68]**

Before the Court are Plaintiff Massachusetts Bay Insurance Company's ("MBIC" or "Plaintiff") Motion for Judgment on the Pleadings ("Pl. Mot.") (Dkt. 64) and Defendant Neuropathy Solutions, Inc.'s ("Neuropathy" or "Defendant") Motion for Judgment on the Pleadings ("Def. Mot.") (Dkt. 68). The Court finds the matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; C.D. Cal. R. 7-15. Having reviewed the moving papers and considered the parties' arguments, the Court DENIES MBIC's Motion and GRANTS Neuropathy's Motion. The hearing scheduled for February 11, 2022 is VACATED.

**I.    Background**

    **A.  Facts**

This case arises out of an underlying lawsuit brought against Neuropathy in state court by a former patient. *See generally* Second Amended Complaint ("SAC") (Dkt. 50). MBIC insured Neuropathy under a Commercial General Liability policy, then defended

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 8:21-cv-00607-DOC-JDE | Date: February 9, 2022 |
| | Page 2 |

Neuropathy in the underlying lawsuit and made a payment to settle the suit. *Id.* In this action, MBIC seeks judgments declaring that (1) MBIC did not have a duty to defend Neuropathy in the underlying lawsuit; (2) MBIC did not have a duty to indemnify Neuropathy in the underlying lawsuit; and (3) Neuropathy is obligated to reimburse MBIC for the defense and settlement costs MBIC incurred in connection with the underlying lawsuit. *Id.*

### i. Underlying Lawsuit

On September 9, 2020, Rigobertal Bernal and Marilena Bernal ("the Bernals") filed an action ("Bernal Action") against Dr. Ralph Highshaw, Elite Medical Group, PC ("EMG"), Neuropathy, and Nurse Alexa Benson, asserting causes of action for negligence, loss of consortium, financial elder abuse, and fraud. SAC ¶ 10. On May 12, 2021, the Bernals filed their First Amended Complaint ("Bernal FAC") (Dkt. 19-3). The Bernal FAC characterized the Action as arising "from a series of falsely advertised, recklessly administered, non-FDA approved 'stem cell' injections Mr. Bernal received that nearly killed him and left him a permanent paraplegic from the waist down." Bernal FAC ¶ 1. The Bernals alleged that Neuropathy created deceptive advertisements stating that "stem cell" treatments would cure knee pain. *Id.* ¶ 4. After viewing the advertisements, Mr. Bernal called Neuropathy and was given an appointment to meet with Neuropathy employees. *Id.* Mr. Bernal attended a meeting with Neuropathy sales agents who, allegedly unbeknownst to Mr. Bernal, were not medical professionals. *Id.* The Neuropathy sales agents informed Mr. Bernal that he had osteoarthritis in his knees and that stem cell injections, which they assured him were safe and legal to sell and use, would alleviate his pain. *Id.* ¶ 5. Mr. Bernal allegedly agreed to proceed with the injections based on these representations and was told that the only way to obtain the injections was to finance them at a cost of $13,250, an amount that is allegedly far greater than the customary rates for such treatment. *Id.* ¶ 6-7. Neuropathy then allegedly passed on the task of performing the injections to EMG and its employees, who were allegedly unqualified to perform or oversee the treatment. *Id.* ¶ 10. The Bernals alleged that the injections, which took place in Neuropathy's offices, did not contain live stem cells but rather a product that was not legal to sell or use pursuant to FDA regulations. *Id.* ¶ 12. The injections were allegedly performed without proper medical recommendation, proper physician oversight, complete medical disclosures, informed consent, or adherence to proper sterile or clean technique. *Id.* After the treatment, Mr. Bernal allegedly went into septic shock, endured numerous surgeries, and is now a permanent paraplegic. *Id.* ¶ 13. The Bernals also allege that Neuropathy targeted Mr. Bernal for high-pressure sales techniques because he was elderly and Hispanic, and that "Mr. Bernal has suffered injury both to his reputation and feelings due to Superior

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:21-cv-00607-DOC-JDE  Date: February 9, 2022
Page 3

Health Centers' targeting of him (whether intentional or not) based on his age and race." *Id.* ¶ 61-62.

### ii. The Management Services Agreement between Neuropathy and EMG

At the time of Mr. Bernal's injury, Neuropathy served as a Manager for EMG's medical practice pursuant to a "Management Services Agreement" (the "Agreement"). Def. Mot. at 6; Decl. of Reid A. Winthrop, ("Winthrop Decl.") (Dkt. 68-2) Ex. AA ("Agreement") at 1. The Agreement had a three-year term and automatically renewed for four additional one-year terms unless terminated. Agreement at 12.

As set forth under Section 2 of the Agreement, the following were among the tasks Neuropathy was responsible for performing on behalf of EMG:

> 2.1 Management Services. During the term of this Agreement, Manager shall provide to EMG the management services set forth in this Section 2. . . . The Management Services shall not include services which relate to the providing of professional services. EMG shall be solely and exclusively in control of all aspects of the delivery and provision of professional services at the Practice. The rendering of all professional services including, but not limited to, diagnosis, treatment, therapy, and the supervision and preparation of all professional reports shall be the responsibility of EMG. Manager shall have no authority or obligation whatsoever with respect to the performance of clinical or professional services provided by the Practice. . . .

> 2.5.1 Professional Staffing. EMG shall have the sole right and authority to contract with independent contractors or to hire, employ, train, supervise, terminate and compensate employees who are licensed professionals including, without limitation, all physicians, physician assistance, nurse practitioners, and other professional personnel, as applicable. . . .

> 2.5.2 Non-Professional Staffing. Manager shall provide EMG with such clerical personnel and other non-licensed employees such as, for example, secretaries, receptionists, file clerks, administrators, etc. . . . . as may be reasonably required to perform adequate administrative services for EMG. . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:21-cv-00607-DOC-JDE

Date: February 9, 2022

Page 4

> 2.6 Managerial and Administrative Services. Unless otherwise set forth in this agreement, Manager shall provide EMG the following managerial and administrative services:
> (a) Supervision and coordination of the day-to-day non-medical business functions taking place in connection with EMG's practice;
> (b) Financial budgeting and planning for EMG's practice;
> (c) A comprehensive information technology system and related administrative services, staffing and maintenance;
> (d) Development and maintenance of a website and all related pages or mobile application software, and related maintenance and upkeep;
> (e) The use of phone number for the purpose of general customer service. . . .
>
> (f) As requested and at the sole discretion of EMG, comprehensive quality assurance services utilizing third party quality evaluations for Professionals;
> (g) At the direction and control of EMG, prepare and maintain various patient intake forms for use in EMB's Practice; and
> (h) All non-licensed managerial and administrative services unrelated to EMG Practice as may be reasonably required by EMG such as, for example, office administrative services, general administrative services, and fiscal management services, to the extent requested by EMG.

*Id.* at 1-7. As demonstrated in the quoted portions above, the Agreement distinguished between "professional services" to be provided by EMG and "managerial and administrative services" to be provided by Neuropathy.

### iii.     The MBIC Insurance Policy

MBIC issued a Commercial General Liability insurance policy to Neuropathy for the policy period of May 1, 2019 to May 1, 2020. SAC ¶ 11; SAC, Ex. A ("MBIC Policy") at 37 of 177. The MBIC Policy states generally that MBIC "will pay those sums the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies" and "will have the right and duty to defend the insured against any 'suit' seeking those damages." MBIC Policy at 107 of 177. The policy liability limit is $2,000,000 per occurrence. Pl. Mot. at 3.

The MBIC Policy contains the following language relevant to MBIC's defense and indemnity obligations:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:21-cv-00607-DOC-JDE                                        Date: February 9, 2022
                                                                                                                             Page 5

> [W]e will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "personal property" or "personal and advertising injury", to which this insurance does not apply. . . .
>
> This insurance does not apply to: . . . "Bodily injury", "property damage", "personal and advertising injury" caused by the rendering of or failure to render any professional service, advice or instruction. . . .
>
> Professional services include but are not limited to: . . . Legal, accounting or advertising services, . . . [and] [a]ny health or therapeutic service treatment, advice or instruction.

MBIC Policy at 107, 113-14 of 177.

### iv. Defense and Settlement of Claims Asserted Against Neuropathy in the Bernal Action

On October 2, 2020, Neuropathy provided notice of the Bernal Action to MBIC, its insurer. SAC ¶ 13. On October 15, MBIC denied coverage on the grounds that the claims in the Bernal Action were excluded under the Policy's Professional Services Exclusion ("Exclusion"). *Id.* ¶ 14. On November 16, 2020, Neuropathy challenged MBIC's denial of coverage. *Id.* ¶ 15. On February 25, 2021, MBIC informed Neuropathy that it would provide a defense to the Bernal Action under a full reservation of rights. *Id.* ¶ 17. On July 13, 2021, MBIC paid the $2 million policy limit to the Bernals to settle the claims asserted against Neuropathy. *Id.* ¶ 27.

### B. Procedural History

MBIC filed suit against Neuropathy in this Court on March 31, 2021 (Dkt. 1). This action was temporarily stayed while the Bernal Action was settled (Dkt. 43). On August 13, 2021, MBIC filed its Second Amended Complaint, which includes causes of action for declaratory relief and reimbursement for settlement and defense payments. On December 23, 2021, MBIC and Neuropathy filed the instant Cross Motions for Judgment on the Pleadings. Each party filed an Opposition on January 10, 2022 (Dkts. 71, 74). Each party filed a Reply on January 18, 2022 (Dkts. 75, 76).

## II. Legal Standard

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:21-cv-00607-DOC-JDE

Date: February 9, 2022
Page 6

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Like a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a motion under Rule 12(c) challenges the legal sufficiency of the claims asserted in the complaint. *See id.* Indeed, a Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, and courts apply the "same standard." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (explaining that the "principal difference" between Rule 12(b)(6) and Rule 12(c) "is the timing of filing"); *see also U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Therefore, all allegations of fact by the party opposing the motion are accepted as true, and the complaint is construed in the light most favorable to the non-moving party. *McGlinchey v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

As with Rule 12(b)(6) motions, "[g]enerally, a district court may not consider any material beyond the pleadings[.] . . . [but] material which is properly submitted as part of the complaint may be considered." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss[,]" or on a Rule 12(c) motion, without converting the motion into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). If the documents are not physically attached to the complaint, they may be considered if their "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them. *Parino v. FHP, Inc.*, 146 F.3d 699,705–06 (9th Cir. 1998), *superseded by statute on other grounds by Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006).

The court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(c) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient" to defeat a motion for judgment on the pleadings. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:21-cv-00607-DOC-JDE

Date: February 9, 2022

Page 7

### III. Discussion

Both parties move for judgment on the pleadings on the issues of (1) whether MBIC had a duty to defend the claims asserted against Neuropathy in the Bernal Action and (2) whether MBIC has a right to receive reimbursement for money paid on behalf of Neuropathy for the defense and settlement of the claims asserted in the Bernal Action. Pl. Mot. at 1-3; Def. Mot. at 1. The Court will first address whether MBIC had a duty to defend Neuropathy.

MBIC does not dispute that the Bernal Action was a "suit" potentially seeking damages from Neuropathy because of "bodily injury," such that it fell within MBIC's coverage. Rather, the parties dispute whether the Professional Services Exclusion in the MBIC Policy defeats coverage for the allegations against Neuropathy in the Bernal Action. MBIC asserts that the Exclusion applies to the Bernal Action, while Neuropathy argues it did not eliminate coverage. Pl. Mot at 6-9; Def. Mot. at 1. Therefore, the Court must determine whether the Exclusion applies to bar coverage for the allegations in the Bernal Complaint such that MBIC had no duty to defend.

#### A. Legal Standard for Duty to Defend Under California Law

Under California law, "an insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." *Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 957 F. Supp. 2d 1135, 1143 (C.D. Cal. 2013) *aff'd*, No. 13-56249, 2015 WL 8057228 (9th Cir. Dec. 7, 2015) (quoting *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19 (1995) (internal quotation marks omitted)). Further, "[a]n insurer must defend its insured against claims that create a *potential* for indemnity under the policy." *Id.* (citing *Montrose Chemical Corp. v. Sup. Ct.*, 6 Cal. 4th 287, 295 (1993) (emphasis in original)). The duty to defend is broader than the duty to indemnify and may apply even in an action where no damages are ultimately awarded. *Id.* (citing *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993)).

The California Supreme Court has explained that "the determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Waller*, 11 Cal. 4th at 19 (citing *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 63 (1996)). "Facts extrinsic to the complaint also give rise to the duty to defend when they reveal a possibility that the claim may be covered by the policy." *Horace Mann*, 4 Cal. 4th at 1081 (citation omitted). On the other hand, "the insurer need not defend if the third party complaint can by no conceivable

theory raise a single issue which could bring it within the policy coverage." *Gray*, 65 Cal. 2d at 276. Further, "where the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend when the bare allegations in the complaint suggest potential liability." *Waller*, 11 Cal. 4th at 19. "Notwithstanding the special features of insurance contracts, they are still subject to the ordinary rules of contractual interpretation." *Big 5 Sporting Goods*, 957 F. Supp. 2d at 1143 (citation omitted). When a policy's terms are plain and explicit, "courts will not indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed." *First Am. Title Ins. Co. v. XWarehouse Lending Corp.*, 177 Cal. App. 4th 106, 115 (2009). "Only if an asserted ambiguity is not eliminated by the language and context of the policy will courts involve the principle that 'ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage.'" *Big 5 Sporting Goods*, 957 F. Supp. 2d at 1143-44 (quoting *XWarehouse*, 177 Cal. App. 4th at 115). However, courts interpret coverage clauses broadly. *Safeco Ins. Co. of Am. v. Andrews*, 915 F.2d 500, 502 (9th Cir. 1990). Indeed, "provisions relating to exclusions or exceptions from the performance of a basic, underlying obligation are construed strictly against the insurer and liberally in favor of the insured." *Paramount Props.*, 1 Cal. 3d at 569.

### B.     Discussion

The parties dispute whether the Exclusion in the MBIC Policy applies to deny Neuropathy coverage for the Bernal Action. MBIC's position is that all of the claims asserted in the Bernal Action arise from "Neuropathy's scheme to advertise, recommend, prescribe and assist in providing stem-cell injections that caused Mr. Bernal's catastrophic injuries." Pl. Opp'n at 1. MBIC asserts that the alleged acts of wrongdoing "place the conduct squarely within the policy's professional services exclusion for which coverage is not provided," and argues that "<u>none</u> of the claims from the underlying *Bernal* action were potentially or actually covered". *Id.* at 1-2 (emphasis in original). Neuropathy, on the other hand, argues that the Bernal FAC alleges both potentially and actually covered claims, since "the Bernals allege several non-professional, negligently performed services by Neuropathy (i.e., covered occurrences) that contributed to the alleged bodily and emotional injuries and damages suffered." Def. Reply at 1. Particularly given "the requirement that the court construe policy exclusions narrowly," *Food Pro Int'l, Inc. v. Farmers Ins. Exch.*, 169 Cal. App. 4th 976, 991 (2008), the Court is persuaded by Neuropathy's arguments.

California courts have defined "professional services" as those "'arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:21-cv-00607-DOC-JDE                              Date: February 9, 2022
                                                            Page 9

skill, and the labor or skill is predominantly mental or intellectual, rather than physical or manual.'" *Tradewinds Escrow, Inc. v. Truck Ins. Exch.*, 97 Cal. App. 4th 704, 713 (2002) (quoting *Hollingsworth v. Comm. Union Ins. Co.*, 208 Cal. App. 3d 800, 806 (1989)). In addition, "professional services" is "a broader definition than 'profession,' and encompasses services performed for remuneration." *Id.* California courts have also noted that "the unifying factor" in applying the exclusion is based on "whether the injury occurred during the performance of the professional services, not the instrumentality of injury." *Id.*; *Food Pro*, 169 Cal. App. 4th at 991 ("We read *Tradewinds*' summation of the reach of the professional services exclusion as follows: the act that precipitated the injury need not have been one of professional malpractice, so long as the plaintiff was injured in the performance of the professional service.").

The Exclusion in the MBIC Policy defines professional services only by way of examples. Relevant here, under the Policy, professional services include: "[l]egal, accounting or advertising services" and "[a]ny health or therapeutic service treatment, advice or instruction." MBIC Policy at 114 of 177.

### i.    Bernal Complaint allegations

With the terms of the MBIC Policy in mind, the Court first looks to some of the pertinent allegations in the Bernal Action.

It is clear that the Bernal FAC alleges the provision of professional services by Neuropathy as the term is used in the MBIC Policy. For example, it alleges that Neuropathy created false and misleading advertisements, Bernal FAC ¶ 4, diagnosed Mr. Bernal with osteoarthritis, *id.* ¶ 5, and advised him that the injections would alleviate his knee pain, *id.* However, the Court also finds some of Neuropathy's conduct allegedly connected to Mr. Bernal's injury potentially did not involve "specialized knowledge, labor, or skill" that was "predominantly mental or intellectual," bringing it outside the definition of professional services. *See Tradewinds*, 97 Cal. App. 4th at 713. These include alleged acts or omissions concerning delegating Mr. Bernal's injections to EMG, Bernal FAC ¶ 10, and allegedly discriminatory sales tactics, *id.* ¶¶ 61-62.

Given the range of allegations in the Bernal FAC, some of which seem to fall outside of the professional services exclusion, the Court cannot conclude that there was *no* potential for coverage under the MBIC Policy. *See Food Pro*, 169 Cal. App. 4th at 989 ("The facts available to [the insurer] at the time it denied a duty to defend thus show potential liability arising from the breach of a common law duty, and not from the performance of professional services."); *cf. Pennsylvania Nat. Mut. Cas. Ins. Co. v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:21-cv-00607-DOC-JDE                                         Date: February 9, 2022
                                                                       Page 10

*Roberts Bros*., 550 F. Supp. 2d 1295, 1306 (S.D. Ala. 2008) ("Under no ordinary common-sense meaning of the term is it a 'professional service' for a property manager to perform (or fail to perform) the strictly clerical task of picking up the telephone to call a handyman to repair a broken door.").

### ii. Neuropathy's Management Services Agreement

The Court's inquiry, however, does not end with the Bernal FAC. Neuropathy also points to extrinsic evidence – the Agreement between Neuropathy and EMG. Neuropathy argues that the Agreement establishes that Neuropathy performed non-professional services that the Bernals allege contributed to the injuries they suffered. Def. Reply at 9.

Looking to the Agreement, the Court concludes that some of Neuropathy's duties were not professional services as the term is defined in the MBIC Policy. For example, Neuropathy's responsibilities pursuant to the agreement included the following: "Non-Professional Staffing. Manager shall provide EMG with such clerical personnel and other non-licensed employees such as, for example, secretaries, receptionists, file clerks, administrators etc. . . . . as may be reasonably required to perform adequate administrative services for EMG." Agreement at 6. A further provision states, "Manager shall provide EMG the following managerial and administrative services . . . . All non-licensed managerial and administrative services unrelated to EMG practice as may be reasonably required by EMG such as, for example, office administrative services, general administrative services." *Id.* at 6-7.

The language of the Agreement contemplates that Neuropathy would complete general administrative office tasks and other day-to-day non-medical business tasks. Performing such tasks would not constitute a "legal, accounting or advertising service" or "health or therapeutic service treatment, advice or instruction" within the meaning of the Exclusion, nor does the Court conclude that such a task would necessarily fall within the definition of professional services set out in *Tradewinds*.

The Court therefore disagrees with MBIC's argument that all of Neuropathy's activities constituted professional services and that all the allegations in the Bernal FAC were necessarily predicated upon Neuropathy's provision or omission of professional services. *See* Pl. Mot. at 20. MBIC has not shown the extrinsic facts – here the Agreement – "eliminate the potential for coverage." *Waller*, 11 Cal. 4th at 19.

### iii. Relationship between injury and professional services

Case 8:21-cv-00607-DOC-JDE   Document 83   Filed 02/09/22   Page 14 of 18   Page ID #:3236

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:21-cv-00607-DOC-JDE                                            Date: February 9, 2022
                                                                                                                 Page 11

      California courts that have discussed whether professional services exclusions apply have not stopped their analyses upon determining that a contract involves the provision of professional services, but rather have gone on to assess whether "the injury arose from the performance of a professional service," or whether the injury merely occurred "at the same time the insured was otherwise providing professional services to a third party." *Food Pro*, 169 Cal. App. 4th at 991; *see also Atain Specialty Ins. Co. v. 20 Parkridge, LLC*, No. 15-CV-00212-MEJ, 2015 WL 2226356, at *10 (N.D. Cal. May 11, 2015) (analyzing California law and concluding that determining the applicability of the professional services exclusion "requires a greater understanding of the services Defendants provided, the actual injuries claimed in the Underlying Action, and the timing that Defendants may have rendered or failed to render the potential professional services."). The *Food Pro* court explained that even when "it is clear that [an insured] . . . provides professional services as the term is used in the [] policy," the issue for the court "involves the extent of [the insured's] professional services, the nature of [the employee's] actions as they relate to the [underlying] incident, and the breadth of the professional services exclusion." *Food Pro*, 169 Cal. App. 4th at 986.

      Here, the allegations in the Bernal Action concerning Neuropathy's conduct as they relate to Mr. Bernal's injury are somewhat unclear. On the one hand, the Bernals allege that "Mr. Bernal would not have agreed to the injections but for the misrepresentations by Superior Health Centers," Bernal FAC ¶ 70, indicating that Neuropathy's alleged misrepresentations caused Mr. Bernal's injury. On the other hand, the Bernals allege that the injections Mr. Bernal received were performed without "proper medical recommendation," "proper physician oversight," "complete medical disclosures," "informed consent," "adherence to proper sterile or clean technique," and "in a manner that fell far below the standard of care for joint injections," and that "[a]s a result of these failures, Mr. Bernal went into septic shock, subsequently enduring numerous surgeries, and is now a permanent paraplegic," *id.* ¶¶ 12-13, indicating that it was the injections themselves, which were performed by EMG and not Neuropathy, that caused Mr. Bernal's injuries.

      MBIC argues that the misrepresentation and the medical treatment are two parts of the same event. Pl. Opp'n at 5. Neuropathy contends that while the Bernal FAC indeed alleges some acts by Neuropathy that constitute professional services, "the Bernals are alleging injuries and damages resulting from other administrative and management services performed by Neuropathy relating to the professional services *provided by EMG*," particularly "the signing up of the consumer, and 'sending' them consumer [*sic*] to unqualified medical providers." Def. Mot. at 16 (emphasis in original). Further, Neuropathy asserts that "[s]igning up consumers, sending them to a medical provider,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:21-cv-00607-DOC-JDE                                                     Date: February 9, 2022
                                                                                                      Page 12

collecting funds, etc., do not arise out of a 'vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill' but instead are clearly administrative in nature." *Id.*

Based on the record before it – in particular the Bernal FAC and the Agreement between EMG and Neuropathy – the Court cannot definitively conclude Mr. Bernal's injury arose out of Neuropathy's rendering of or failure to render any professional services to Mr. Bernal. *Cf. Food Pro*, 169 Cal. App. 4th at 991 (finding potential for coverage where injury occurred while insured party was otherwise providing professional services to a third party).

The Court finds that MBIC has failed to show the absence of any potential for coverage; MBIC has not met its burden of "provid[ing] conclusive evidence demonstrating that the [Professional Services Exclusion] applies." *Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1038–39 (2002) ("An insurer may rely on an exclusion to deny coverage only if it provides conclusive evidence demonstrating that the exclusion applies."). Thus, the Court concludes that the Bernal Action raised the potential for coverage under the MBIC Policy.

MBIC argues it had no duty to indemnify Neuropathy because it had no duty to defend Neuropathy in the Bernal Action. Pl. Mot. at 13. Because the Court has concluded that MBIC had a duty to defend, MBIC's indemnity argument also fails. Moreover, since the Bernal Action's claims raised the potential for coverage under the MBIC Policy, MBIC was obligated to defend Neuropathy, and Neuropathy has no obligation to reimburse MBIC for its defense. Accordingly, the Court DENIES Plaintiff's Motion and GRANTS Defendant's Motion.

**IV. Disposition**

For the reasons explained above, the Court DENIES Plaintiff's Motion for Judgment on the Pleadings and GRANTS Defendant's Motion for Judgment on the Pleadings. All claims against Defendant are hereby DISMISSED WITH PREJUDICE. The motion hearing scheduled for February 11, 2022 is hereby VACATED.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                                              Initials of Deputy Clerk: kdu

# EXHIBIT B

| | |
|---|---|
| 1 | STEPHEN M. HAYES (SBN 83583) |
| 2 | RYAN Z. KELLER (SBN 249193) |
|   | CHARLES E. TILLAGE (SBN 177983) |
| 3 | HAYES SCOTT BONINO ELLINGSON |
|   | GUSLANI SIMONSON & CLAUSE LLP |
| 4 | 999 Skyway Road, Suite 310 |
|   | San Carlos, California 94070 |
| 5 | Telephone: 650.637.9100 |
|   | Facsimile: 650.637.8071 |
| 6 | |
| 7 | Attorneys for Plaintiff |
|   | MASSACHUSETTS BAY INSURANCE COMPANY |
| 8 | |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| MASSACHUSETTS BAY INSURANCE COMPANY, | | CASE NO.: 8:21-cv-00607-DOC-JDE |
| | Plaintiff, | **EXHIBIT B—REPRESENTATION STATEMENT** |
| v. | | |
| NEUROPATHY SOLUTIONS, INC. dba SUPERIOR HEALTH CENTERS, | | |
| | Defendant. | |

1919109

-1-

**Representation Statement—Case No. 8:21-cv-00607-DOC**

Pursuant to Rule 12(b) of the Federal Rules of Appellate Procedure and Ninth Circuit Rule 3-2, Plaintiff Massachusetts Bay Insurance Company provides the following list of parties to this action as well as the names, addresses, telephone numbers, and email addresses.

Plaintiff Massachusetts Bay Insurance Company is represented by:

> Stephen M. Hayes (SBN 83583)
> Ryan Z. Keller (SBN 249193)
> Charles E. Tillage (SBN 177983)
> HAYES SCOTT BONINO ELLINGSON
> GUSLANI SIMONSON & CLAUSE LLP
> 999 Skyway Road, Suite 310
> San Carlos, California 94070
> Telephone: 650.637.9100
> Facsimile: 650.637.8071
> shayes@hayesscott.com
> rkeller@hayesscott.com
> ctillage@hayesscott.com

Defendant Neuropathy Solutions, Inc. dba Superior Health Centers is represented by:

> Reid A. Winthrop (SBN 223527)
> WINTHROP LAW GROUP, P.C.
> 120 Newport Center Drive
> Newport Beach, California 92660
> Telephone: 949.269.3256
> Facsimile: 949.209.1919
> reid@winthroplawgroup.com

Dated: March 9, 2022

HAYES SCOTT BONINO ELLINGSON
GUSLANI SIMONSON & CLAUSE, LLP


By: */s/ Ryan Z. Keller*
STEPHEN M. HAYES
RYAN Z. KELLER
CHARLES E. TILLAGE
Attorneys for Plaintiff
MASSACHUSETTS BAY INSURANCE COMPANY